Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4664 | **DATE** | 7/9/2004 |
| **CASE TITLE** | U.S. ex rel. Williams v. Winters | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitioner Williams' Petition for a Writ of Habeas Corpus (doc. # 1-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Kevin L. Winters, the warden of the Western Illinois Correctional Center, is hereby substituted as the respondent. After careful consideration of the entire record, Petitioner Williams' § 2254 petition for a writ of habeas corpus [1-1] is DENIED. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 13 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| JHC courtroom deputy's initials | | 2004 JUL 12 PM 4: 35 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 1 3 2004

UNITED STATES OF AMERICA, )
EX. REL., RONALD WILLIAMS, )
)
    Petitioner, )
) No. 01 C 4664
v. )
) Judge William J. Hibbler
KEVIN L. WINTERS,[1] Warden )
)
    Respondent. )

## MEMORANDUM OPINION AND ORDER

Petitioner, Ronald Williams, a prisoner in state custody, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Williams raises ten claims, including ineffective assistance of both trial and appellate counsel, abuse of discretion by the trial court, and prosecutorial misconduct. For the following reasons, Williams' request for relief under §2254 is denied.

**I.    Factual Background**

Under 28 U.S.C. §2254(e)(1), the state court's determination of factual issues is presumed correct for the purposes of habeas review, although a petitioner may rebut the presumption of correctness through the provision of clear and convincing evidence. *Davis v. Litscher*, 290 F.3d 943, 946 (7th Cir. 2002). As Williams provides no such evidence, this Court will adopt the underlying facts as set forth by the Illinois Appellate Court in *People v. Williams*, No. 94-10282 (1st Dist. Dec. 24, 1997) (unpublished order).

---

[1] Ronald Williams has been transferred to Western Illinois Correctional Center where Kevin L. Winters is the Warden. He is thus the proper respondent in this habeas action. See Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. §2254. The Court hereby substitutes Kevin L. Winters as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

1

In 1973, Ronald Williams met Mary Cross, and in 1977 they had a daughter. In the late 1970's, Williams went to California, abandoning Cross and his daughter. He did not return to Illinois until approximately 1983. After his return, Williams and Cross had a sporadic relationship, and Williams proposed to Cross in December 1993. She declined, and the next month she told Williams she did not want to see him anymore. On March 21, 1994, Williams approached Cross as she was leaving her place of work, a bridal salon in a downtown Chicago shopping district. He wanted to talk to her, but she refused to speak with him. Williams then attacked Cross with a hatchet he had concealed in a brown paper bag, striking her repeatedly about the head. Cross testified that Williams said he was going to kill her as he raised the weapon over his head. Attempting to evade Williams, Cross ran into the street screaming. Her screams drew the attention of several others, who tried to intervene and restrain Williams. However, Williams kept swinging the hatchet wildly at the crowd, and managed to keep the would-be rescuers at bay, all the while continuing to attack Cross. A German tourist snapped a photo of Williams hacking at Cross. Williams then fled down Michigan Avenue, chased by onlookers, who tackled Williams on a side street and held him until the police arrived a few moments later.

Following a jury trial in the Circuit Court of Cook County, Williams was convicted of attempted first-degree murder. On April 12, 1995, the court sentenced him to the maximum extended term of sixty years' imprisonment. In imposing the maximum extended sentence, the court cited Williams' previous convictions, the brutal and heinous nature of his crime, and the occurrence of the crime in an area frequented by tourists.

II. **Procedural History**

On April 12, 1995, the trial court denied Williams' motion for a new trial. Williams then

appealed his conviction to the Illinois Appellate Court. In his appeal, Williams raised six claims: (1) the trial court erred in prohibiting defense counsel from impeaching a witness; (2) the trial court erred in ruling Williams' prior convictions would be admissible if he testified; (3) the prosecution's use of inflammatory rhetoric and unsupported assertions deprived Williams of a fair trial; (4) ineffective assistance of trial counsel for conceding guilt and failing to object during closing argument; (5) the prosecution failed to prove intent to kill beyond a reasonable doubt; and (6) the trial court improperly sentenced Williams to an extended term of sixty years. The Illinois Appellate Court held that Williams had waived his first two claims of trial court error and his claim of prosecutorial misconduct. The court also found that none of these claims merited review under the plain error doctrine, as the evidence was not closely balanced and the alleged error did not deprive Williams of a fair trial. The court addressed the remaining claims on the merits, and found nothing to warrant remand to the trial court. Accordingly, the appellate court affirmed Williams' conviction on December 24, 1997. *People v. Williams*, No. 1-95-1616. On January 29, 1998, Williams filed a *pro se* petition for leave to appeal to the Supreme Court of Illinois, in which he raised the same six claims brought on direct appeal. The Supreme Court denied his petition on April 1, 1998.

Williams next filed a *pro se* post-conviction petition, pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1. He raised sixteen claims in this petition, including seven counts of ineffective assistance of trial counsel,[2] six counts of abuse of discretion by the trial

---

[2]Trial counsel was ineffective when it: (1) entered into a stipulation regarding the use of photos as evidence; (2) refused to pursue Williams' conspiracy claim; (3) refused to obtain medical records of the victim or subpoena physicians to testify as to the extent of the victim's injuries; (4) failed to call witnesses; (5) agreed to exclude a full reading of the jury instructions; (6) conceded Williams' guilt; and (7) refused to inform the trial court of possible jury tampering.

3

court,[3] prosecutorial misconduct resulting in jury tampering, conspiracy between prosecutors and police, and ineffective assistance of appellate counsel for failing to investigate Williams' claims. The Circuit Court of Cook County dismissed the petition as "frivolous and patently without merit" on April 14, 1998. After the petition was denied, the State Appellate Defender moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), stating that Williams had raised no viable claims. In spite of Williams' objection, the Illinois Appellate Court granted the motion. In its order, the court also affirmed the judgment of the trial court, finding no issues of arguable merit. Williams then petitioned the Illinois Supreme Court for leave to appeal the dismissal, limiting his claims to four counts of ineffective assistance of trial counsel[4] as well as ineffective assistance of appellate counsel. The Supreme Court denied his petition on July 5, 2000.

On March 27, 2001, Williams filed a second *pro se* post-conviction petition alleging the determination by the trial court that the crime was exceptionally brutal and heinous and indicative of wanton cruelty was not charged in the indictment nor submitted to the jury and proved beyond a reasonable doubt. Again, Williams' petition was denied as without merit. On July 14, 2003, Williams advised this Court that the remaining state proceedings were concluded, and that his appeals had been denied. Therefore, the Court granted Williams' request to proceed with the instant

---

[3]The trial court abused its discretion because it: (1) erred in prohibiting impeachment of the victim's testimony; (2) erred in not allowing into evidence the victim's affidavit concerning an arson conviction; (3) erred in overlooking reading of the jury instructions; (4) erred in allowing super-sized photos into evidence; (5) erred in ordering a continuance in lieu of a new trial after Williams' claim of jury tampering; and (6) violated the Illinois Constitution by sentencing Williams to an extended term.

[4]Trial counsel was ineffective in light of its refusal to: (1) obtain easily discoverable medical records; (2) call witnesses on Williams' behalf or investigate his claims to establish victim's character; (3) insist on a full reading of the jury instructions for aggravated battery; and (4) inform the trial court of possible jury tampering immediately following its occurrence.

4

habeas petition and lift the stay in this matter.

**III. Standard of Review**

The statute governing this Court's analysis of Williams' petition for writ of habeas corpus is the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C §2254. *See also Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir. 2002). The AEDPA provides that a petitioner is entitled to a writ of habeas corpus if the state court ruling is "contrary to" or "an unreasonable application of" clearly established federal law as established by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams*, the Supreme Court held that a state court decision may be "contrary to" federal precedent if the state court reaches an opposite conclusion on a point of law, or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and it arrives at a result opposite to ours." *Id.* at 406. Alternatively, an unreasonable application of federal law occurs when a state court "identifies the correct governing principle but unreasonably applies [it]" to the facts of the case. *Id.* at 413. The mere fact that the reviewing court may have decided differently does not render a state court ruling unreasonable; rather, the decision must lie "well outside the boundaries of permissible differences of opinion." *Hardaway*, 302 F.3d at 762.

Additionally, in conducting habeas review, federal courts should not reexamine state court determinations of state law issues. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The sole question for the Court's consideration is whether the petitioner's conviction violates the laws, treaties or Constitution of the United States. *Id.* Therefore this Court will not consider Williams' claims concerning state court error.

Williams raises ten grounds in his habeas petition. He alleges that his constitutional rights

5

were violated because: (1) the trial court refused to allow him to impeach the victim's testimony; (2) the prosecution presented insufficient evidence to establish requisite intent to kill; (3) the trial court ruled that his criminal record would be admissible if he took the witness stand; (4) the trial court failed to prohibit the prosecution from using inflammatory rhetoric, engaging in improper speculation, and calling the jury's attention to Williams' lack of testimony; (5) Williams was improperly and erroneously sentenced to an extended term of sixty years; (6) his trial counsel was ineffective in fourteen instances;[5] (7) his appellate counsel was ineffective for failing to raise all of his trial counsel's deficiencies; (8) the prosecution committed misconduct by means of jury tampering; (9) his post-conviction counsel was ineffective for moving to withdraw; and (10) the trial court abused its discretion in six instances.[6]

---

[5]Trial counsel was ineffective because he: (1) stipulated to photos; (2) conceded Williams' guilt; (3) failed to object to the prosecution's inflammatory remarks and raise the issue in post-trial motion; (4) failed to conduct adequate pre-trial investigation regarding a State's witness' relationship with the victim; (5) failed to interview potential witnesses for the defense; (6) failed to obtain medical records of the victim or subpoena physicians to testify as to the extent of her injuries; (7) refused to pursue Williams' conspiracy claim; (8) failed to admit the victim's affidavit into evidence; (9) failed to argue adequately that Williams' prior convictions were inadmissible; (10) failed to insist on a full reading of the jury instruction for aggravated battery; (11) refused to immediately apprise the trial court of possible jury tampering; (12) failed to poll the jury regarding the potential influence of the prosecutor's remarks; (13) failed to make a drug/intoxication defense; and (14) failed to inform the court that the prosecutor was talking to his client without permission.

[6]The trial court abused its discretion by: (1) failing to allow evidence of the victim's previous acts of violence against Williams; (2) allowing the admission of super-sized photos into evidence; (3) failing to admit the affidavit of the victim that would show bias against Williams; (4) overlooking the misreading of jury instructions; (5) failing to order a new trial when the issue of jury tampering was raised; and (6) sentencing Williams to an extended term.

## IV. Procedural Default

### A. Standard

Claims made in a federal habeas petition will not be evaluated on their merits unless they have been fully and fairly presented to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). "If the prisoner has not exhausted available state remedies as to any of his federal claims," the claims are deemed procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In addition, claims that do not meet the state's adequate and independent procedural requirements for presenting federal claims are procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 262 (1989). However, the state's procedural requirements must be "firmly established and regularly followed" in order to be adequate. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). The state court must also "clearly and expressly" rely on the independent and adequate state ground as the basis for its denial. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).

In the event of procedural default, the petitioner can overcome the bar to federal habeas review in one of two ways: demonstrate good cause for the default and actual prejudice resulting from the constitutional violation, or demonstrate that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *Spreitzer v. Schomig*, 219 F.3d 639, 647 (7th Cir. 2000). Good cause for default is limited to an external objective impediment that prevented the petitioner from making the claim, such as interference by state officials or unavailability of a factual or legal basis for the claim at the time of filing the habeas petition. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To illustrate actual prejudice, the petitioner must show that the error worked to his actual and substantial disadvantage. The mere possibility of prejudice will not suffice to overcome the default. *United States v. Frady*, 456 U.S. 152, 170 (1982). In the absence of good cause and

7

actual prejudice, the defaulted claim may still be eligible for habeas review if the petitioner can establish that a fundamental miscarriage of justice would ensue should the claim be dismissed. To do so, the petitioner must demonstrate that the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96.

### B. Claims Barred by the Exhaustion Doctrine

Williams failed to exhaust state remedies for many of his claims, and thus they are procedurally defaulted. The State asserts that all but two of Williams' fourteen counts of ineffective assistance of trial counsel are novel in this habeas petition. However, this assertion is incorrect. Only the following four instances of ineffective assistance of trial counsel are raised for the first time in the current habeas petition: (1) failure to admit the victim's affidavit into evidence; (2) failure to poll the jury regarding the potential influence of the prosecutor's inflammatory remarks; (3) failure to make any drug or intoxication defense; and (4) failure to inform the trial court that the prosecutor was talking to his client without permission. These claims are excluded from the Court's review as Williams has not fairly presented them in state court.

Of Williams' ten remaining claims of ineffective assistance of trial counsel, five others also fail to satisfy the exhaustion doctrine. According to Williams, trial counsel was ineffective because he: (1) stipulated to super-sized photographs of Williams attacking Cross; (2) failed to conduct adequate pre-trial investigation regarding a State's witness' relationship with the victim; (3) failed to argue that Williams' prior convictions were inadmissible; (4) failed to pursue Williams' conspiracy claim; and (5) failed to interview potential witnesses for the defense. Although Williams raised these claims on either direct appeal or collateral attack, he did not raise them to the highest state authority, and thus failed to satisfy the exhaustion doctrine. Williams raised the issues of his

counsel's stipulation, inadequate investigation, and failure to argue inadmissibility of prior convictions in a footnote to his direct appeal. In his petition for leave to appeal to the Supreme Court, however, Williams failed to raise the claims of his counsel's failure to conduct adequate investigation and to argue the inadmissibility of prior convictions. He also did not include his argument that his trial counsel was ineffective for stipulating to the super-sized photographs in his ineffectiveness of trial counsel claim. Rather, in the petition for leave to appeal, he merely mentioned this stipulation in a general account of his trial counsel's actions.

In his first post-conviction petition, Williams again raised the stipulation issue as well as his trial counsel's failure to pursue the conspiracy claim. Nevertheless, because he failed to include either claim in his petition for leave to appeal, these claims are barred from habeas review by procedural default. Conversely, Williams' claim concerning his trial counsel's failure to interview potential witnesses appears in the petition for leave to appeal, but not in the post-conviction petition itself. Thus, it too is defaulted. Procedural default also bars Williams' claim of ineffective assistance of appellate counsel. Although Williams included this claim in his petition for leave to appeal the denial of the first post-conviction petition, Williams failed to include this claim in the post-conviction petition itself.

Four of Williams' six claims that the trial court abused its discretion are also procedurally defaulted. Williams included the four claims in his post-conviction petition; however, he did not include them in his subsequent petition for leave to appeal. These four defaulted claims are that the trial court abused its discretion when it: (1) allowed the admission of super-sized photos into evidence; (2) failed to admit the affidavit of the victim that would allegedly show her bias against Williams; (3) overlooked the misreading of jury instructions; and (4) failed to order a new trial when

the issue of jury tampering was raised.

Finally, Williams' claim of prosecutorial misconduct by means of jury tampering, while incorporated into the first post-conviction petition, was not raised as a distinct claim in the petition for leave to appeal. Therefore, it is also procedurally defaulted. Williams makes no showing of good cause and actual prejudice or a fundamental miscarriage of justice, and thus he cannot overcome the procedural default for any of the above claims.

### C. Claims Barred by Independent and Adequate State Grounds

Illinois law provides that failure to raise an issue both at trial and in a post-trial motion results in waiver. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988). The Illinois Appellate Court found that Williams waived three of his claims by failing to raise them in his post-trial motion. Waiver constitutes an independent and adequate state ground for decision, such that these claims are procedurally defaulted. *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997); *Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997). The appellate court found the following claims waived, and they are therefore barred from habeas review: (1) the trial court abused its discretion and violated Williams' constitutional right to confrontation as guaranteed by the Sixth Amendment when it refused to allow him to impeach the victim's testimony; (2) the trial court abused its discretion and violated Williams' Fifth and Sixth Amendment rights when it ruled that Williams' criminal record would be admissible if he took the witness stand; and (3) the trial court violated Williams' constitutional rights by failing to prohibit the prosecution's misconduct. Finally, as Williams does not show good cause and actual prejudice, nor a fundamental miscarriage of justice, he does not overcome the procedural default.

In addition, independent and adequate state grounds bar Williams' assertion that his trial

counsel's agreement to exclude a full reading of the jury instructions on the elements of aggravated battery deprived him of a fair trial. When the state court denied Williams' first post-conviction petition, it found this claim was barred under the waiver doctrine, as Williams could have raised this claim on direct appeal but failed to do so. The state court held that only constitutional issues that have not been and could not have been previously adjudicated are proper for review in a post-conviction petition. As the Illinois court explicitly relied on the state procedural bar of waiver, Williams has procedurally defaulted on this claim as well. Furthermore, Williams does not show good cause and actual prejudice, nor a fundamental miscarriage of justice, and thus does not overcome the procedural default.

### D. Noncognizable Claims

Claims that do not present a violation of federal law are not cognizable in a habeas petition. *Estelle*, 502 U.S. at 68. Williams' claim of ineffective assistance of post-conviction counsel is noncognizable under 28 U.S.C. §2254(i), which states that: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." As there is no constitutional right to counsel in such proceedings, ineffective assistance of post-conviction counsel cannot serve as a basis for habeas relief. *See Coleman*, 501 U.S. at 752. This claim is consequently barred from the Court's review.

In addition, Williams' habeas claims that the trial court unconstitutionally sentenced him to an excessive, extended term of sixty years are noncognizable. In his direct appeal and petition for leave to appeal, Williams framed the excessive sentence claims as an issue of state law, and therefore Williams did not alert the state courts to his constitutional claim. As such, his claims that his constitutional rights were violated by imposition of an excessive sentence are procedurally defaulted.

11

Nevertheless, even if Williams intended to claim excessive sentence on constitutional grounds in state court, his claims fail. At the time of Williams' sentence, the maximum sentence for attempted murder was thirty years, and the maximum extended sentence was sixty years. 730 ILCS 5/5-8-1 (a)(3); 730 ILCS 5/5-8-2(a)(2). The trial court was acting within its purview when it held that an unprovoked attack on an unarmed victim with a hatchet was exceptionally brutal or heinous. The trial court properly considered aggravating factors in order to determine whether an extended sentence was warranted under 730 ILCS 5/5-8-2(a)(2). The Court considered Williams' previous criminal record, the dangerousness of the crime in an area highly frequented by tourists, and the repeated use of a hatchet on his unarmed victim. Contrary to Williams' claim, there is no evidence that the trial court imposed the maximum extended term as a penalty for Williams' refusal to accept a plea agreement. Therefore, the trial court did not abuse its discretion in finding that the aggravating factors supported giving an extended sentence to Williams.

## V. Merits Analysis

Williams raises several habeas claims that survive procedural default: the prosecution failed to present sufficient evidence to establish intent to kill, and his trial counsel was ineffective. The Court now examines the merits of these claims to determine whether they warrant habeas relief.

### A. The Prosecution Failed to Present Sufficient Evidence of Intent to Kill

In his direct appeal and petition for leave to appeal, Williams alleged that the prosecution, by relying mainly on Cross' testimony that Williams said he was going to kill her, failed to prove that Williams intended to kill Cross. The Illinois Appellate Court addressed this claim on the merits, holding that even without Cross' testimony, the abundance of other evidence – including eyewitness accounts, photographs taken of Williams attacking Cross, trial counsel's admission that Williams

12

struck the victim with a hatchet, and Williams' conduct after the offense – was more than ample to prove Williams guilty of attempted first degree murder beyond a reasonable doubt.

In measuring the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). One of the "essential[s] of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof." *Id.* at 316. A rational trier of fact could surely find the elements of attempted murder beyond a reasonable doubt in this case based on the profusion of other evidence against Williams. Under the AEDPA, unless the Illinois Appellate Court decision was contrary to or involved an unreasonable application of clearly established federal law, there is no basis for habeas relief. *See* 28 U.S.C. §2254 (d). Williams makes no such showing in his petition, and accordingly the Court finds that he is not entitled to relief on this claim.

### B.    Ineffective Assistance of Trial Counsel

The standard for establishing ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must satisfy a two-prong test, showing that counsel's performance fell below an objective standard of reasonableness and that actual prejudice resulted from the deficient performance. *Id.* at 687. To establish prejudice, the petitioner must demonstrate a "reasonable probability" that but for counsel's unprofessional error the outcome would have been different. *Liegakos v. Cooke*, 106 F.3d 1381, 1386 (7th Cir. 1997). As the Supreme Court held in *Strickland*, trial strategy should not be subject to second-guessing, creating a strong presumption that counsel's conduct "falls within the wide range of reasonable professional

assistance." *Strickland*, 466 U.S. at 689.

Four of Williams' ineffective assistance of trial counsel claims survive procedural default, and the Court will therefore consider the merits of these claims. Williams claims his trial counsel was ineffective for: (1) conceding Williams' guilt; (2) failing to object to the prosecution's inflammatory remarks at trial and follow up in a post-trial motion; (3) failing to obtain medical records of the victim or subpoena physicians to testify as to the extent of the victim's injuries; and (4) failing to immediately inform the trial court of possible jury tampering.

### 1. Concession of Guilt

Williams asserted in both his direct appeal and petition for leave to appeal that trial counsel conceded his guilt in closing argument, making it impossible for the jury to render a fair verdict. In the instant petition, he lists five specific remarks made by trial counsel that allegedly prejudiced the outcome of his trial: (1) "There is no describing how bad this is; the horror that Mary Cross had to live through that day;" (2) "What he did was horrible. It was awful;" (3) "The hatchet was certainly a terrible weapon and he used it brutally;" (4) "It's a horrible thing that happened;" and (5) "[The prosecutor's] angry. I'm angry...you should be angry."

The Illinois Appellate Court addressed this claim on the merits and noted that trial counsel, while admitting the acts of Williams, did not concede attempted murder. In light of the overwhelming evidence, the appellate court felt trial counsel's concession of Williams' acts could be nothing other than trial strategy. When the evidence of a defendant's guilt is profuse, concession by trial counsel is not ineffectiveness *per se*. *See United States v. Simone*, 931 F.2d 1186, 1194 (7th Cir. 1991) (by admitting what could not be denied, defense attorney hoped to buttress his credibility with the jury, a viable trial strategy). According to the appellate court, trial counsel's concession of

14

Williams' acts was an attempt to establish that while Williams did indeed attack Ms. Cross, he did not intend to kill her. This Court agrees. Furthermore, there is no evidence of prejudice to Williams, as he has not established a reasonable probability that the outcome of the proceedings would have been different had his trial counsel employed an alternative strategy. As this claim does not satisfy the *Strickland* test, it cannot serve as the basis for habeas relief.

### 2. Failure to Object to the Prosecution's Inflammatory Remarks

Williams also alleges that his trial counsel was ineffective because he failed to object to the prosecution's inflammatory remarks during closing statement and rebuttal, and he failed to raise the issue in a post-trial motion. In both his direct appeal and petition for leave to appeal, Williams argued that the prosecution's inflammatory comments and unsupported assertions prejudiced the outcome of the trial, and the failure of his trial counsel to object deprived him of due process. In particular, Williams asserts that his trial counsel should have objected when the prosecution: (1) stated that Williams had a plan to kill Cross; (2) characterized the hatchet as a "killing tool;" (3) referred to the hatchet's blade as the "killing part;" and (4) drew the jury's attention to Williams' failure to testify by referring to "uncontradicted" evidence of Williams' intent to kill.

In its review of this claim, the Illinois Appellate Court held that the State was merely making reasonable inferences in positing its theory of the case and that none of the comments were erroneous. Thus defense counsel's failure to object to them was inconsequential. While the prosecution may not introduce new facts when making its closing argument, it may argue reasonable inference from the evidence seen and heard by the jury. *United States v. Waldemer*, 50 F.3d 1379, 1383 (7th Cir. 1995). One can reasonably infer that Williams, waiting for Cross with a hatchet outside her place of work, had a plan. Similarly, it is a reasonable inference that a hatchet can be a

15

deadly weapon when wielded against an unarmed victim.

In addition, "[t]he law is most clear that any indirect commentary on the defendant's failure to testify, including references to 'uncontradicted' or 'uncontested' testimony, in order to be improper, must (1) consist of language and words that are 'manifestly intended' to be a comment on the defendant's decision not to take the stand, when analyzed in the context in which they are used, or (2) be of such a character that the jury would 'naturally and necessarily take it to be a comment on the defendant's silence.'" *U.S. v. Harris*, 271 F.3d 690, 700 (7th Cir. 2001). In this case, as in *Harris*, where the defendant is not the only person capable of contradicting the evidence, the prosecution's reference to "uncontradicted" evidence does not satisfy this test and is not an inappropriate reference to Williams' failure to testify. *Id.* There were numerous eyewitnesses to Williams' crime who could have, but did not, contradict the evidence against Williams.

Furthermore, Williams does not demonstrate that defense counsel's failure to object to any of these statements resulted in prejudice adequately severe to alter the outcome of the trial. Therefore, Williams' claim must fail, as it does not satisfy the standard as delineated in *Strickland*. Finally, his trial counsel's decision not to raise these meritless issues in a post-trial motion is not grounds for an ineffective assistance of counsel claim. *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000) (attorneys are not incompetent for failing to raise every conceivable issue; one of the most important parts of advocacy is selecting the correct claims to raise).

### 3. Failure to Obtain Medical Records of Victim or Subpoena Physicians to Testify as to Extent of Victim's Injuries

Williams next claims that his trial counsel's failure to obtain the medical records of the victim or subpoena physicians to testify as to the nature of the victim's injuries is adequate grounds

for habeas relief. According to Williams, Cross could not have been sedated at the hospital as she claimed in her testimony, because sedation is not given to head injury victims. Thus, concludes Williams, if his trial counsel had obtained the victim's medical records, or put on medical witnesses to verify that sedation is not administered in such cases, he could have undermined the victim's testimony. In his first post-conviction petition, subsequent appeal and petition for leave to appeal, Williams claims ineffective performance of trial counsel for failing to demonstrate Cross' willingness to lie under oath.[7]

The trial court addressed this claim on the merits in its denial of Williams' first post-conviction petition. In deciding the post-conviction petition, the state court reviewed the record, including the prior Illinois Appellate Court decision, and found that the nature of the victim's head injury from repeated hatchet blows was clear. Thus, the court held that Williams was not prejudiced by the alleged incompetent conduct of his attorney. This Court agrees. After the attack, Cross had to be rushed to the hospital in an ambulance and treated with fifty double stitches. In view of the wealth of evidence presented by the prosecution, and the extent of bodily harm Williams inflicted on Cross, it is unlikely that a minor inconsistency in testimony would have altered the outcome of the trial. Nor does Williams establish a reasonable probability that the missing evidence on sedation of head injury victims resulted in actual prejudice, and as such, this claim is not sufficient to support habeas relief.

---

[7]In the Illinois Appellate Court's opinion granting Williams' appellate attorney leave to withdraw, the court also affirmed the judgment of the trial court, finding no issues of arguable merit on reviewing the record. The claims Williams raised in his post-conviction petition had thus been ruled on for purposes of the appeal. *Wilkinson v. Cowan*, 231 F.3d 347, 350-52 (7th Cir. 2000).

### 4. Failure to Immediately Apprise Trial Court of Possible Jury Tampering

Williams claimed in a footnote to his direct appeal brief, as well as in his post-conviction petition and subsequent appeals, that the State's Attorney engaged in prosecutorial misconduct that affected the jury. Specifically, Williams alleged that the prosecutor asked him to sign one of the evidence photos, deliberately provoking him into a loud and heated argument outside the jury room. After a hearing on the matter, the trial judge held that even if there had been contact with the jury (no other testimony supported Williams' contention), the contact had occurred after the delivery of the verdict. Moreover, even if there were error, the court deemed it harmless in light of the compelling evidence of Williams' guilt. Williams asserts that his trial counsel's failure to raise the issue of jury tampering deprived him of a fair trial. As the trial court held a hearing at which it found that the jury tampering was not conclusively established as fact, and the comments allegedly made within earshot of the jury had no bearing on the finding of Williams' guilt or innocence, there is no evidence of deficient performance by the trial counsel, and no showing of actual prejudice. Therefore, as this claim fails to satisfy the *Strickland* test, Williams' fourth claim of ineffective assistance of trial counsel is also insufficient to merit habeas relief.

## VI. Conclusion

For the foregoing reasons, Williams' petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 is DENIED.

IT IS SO ORDERED.

7/9/04
Date

The Honorable William J. Hibbler
United States District Court